24CA1309 Peo in Interest of ZJJL 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1309
Weld County District Court Nos. 20JV486 & 21JV89
Honorable Anita J. Crowther, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.J.J.L., Y.C., J.L., and Y.L-N., Children,

and Concerning E.L., and R.L.L.,

Appellants.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Tow and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem, for Z.J.J.L. and Y.C.

Josi McCauley, Counsel for Youth, Superior, Colorado, for J.L. and Y.L-N.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant E.L.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant R.L.L.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this consolidated dependency and neglect proceeding, E.L. (mother) and R.L.L. (father) appeal the juvenile court's judgment terminating their parent-child legal relationships with Y.L-N., Y.C., J.L., and Z.J.J.L. (the children).  We affirm.

## I.    Background

¶ 2    In 2020, the Weld County Department of Human Services became involved with the family due to concerns about domestic violence and the parents' substance use.  The Department filed a petition in dependency and neglect for Y.L-N., Y.C., and J.L.  The juvenile court adjudicated those children dependent or neglected and adopted treatment plans for the parents.

¶ 3    During the pendency of that case, mother gave birth to Z.J.J.L.  The Department then filed a petition in dependency and neglect for Z.J.J.L. due to continuing concerns about the parents' substance use.  The juvenile court adjudicated Z.J.J.L. dependent or neglected and entered additional treatment plans for the parents.

¶ 4    The Department later moved to terminate mother's and father's parental rights to the children.  After a three-day hearing, the juvenile court granted the motion.

## II.     Reasonable Efforts

¶ 5     The parents assert that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them and reunify their family.  We disagree.

### A.     Legal Principles and Standard of Review

¶ 6     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, a department must make reasonable efforts to rehabilitate the parents and reunite the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts mean the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 7     Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among other services, section 19-3-208 requires screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services.  § 19-3-208(2)(b).  Other services — such as transportation assistance, diagnostic and mental health services, and drug and alcohol treatment

2

services — must be provided if the government has sufficient funding. § 19-3-208(2)(d).

¶ 8 When evaluating a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of E.D.*, 2025 COA 11, ¶ 11. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan, and the court may consider a parent's unwillingness to participate in treatment as a factor in determining whether the department made reasonable efforts. *Id.* at ¶ 12.

¶ 9 Whether a department satisfied its obligation to make reasonable efforts to rehabilitate the parents and reunify the family is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination whether a department satisfied its reasonable efforts obligation. *Id.*

B. Reasonable Efforts to Rehabilitate Father

¶ 10 Father contends that the Department failed to make reasonable efforts to rehabilitate him because it didn't (1) assist him in modifying the criminal protection order that prevented him from

3

contacting the children; (2) facilitate family time by allowing Y.L-N. and J.L. to refuse visits; or (3) provide family therapy that may have encouraged Y.L-N. and J.L. to attend family time.

¶ 11　Father cites no authority — and we're aware of none — that required the Department to help him modify the criminal protection order to allow family time with the children.  The protection order was put in place in father's criminal case after father injured mother and one of the children.  Once the Department learned the criminal protection order had been lifted, however, it started family time services for father.

¶ 12　As to family time, though the caseworker and counsel for youth repeatedly encouraged Y.L-N. and J.L. to participate in family time, both children refused because they feared father and — given father's substance use, history of violence, and difficulty in taking accountability for his actions — they felt unsafe around him.  Both children also reported that father's inconsistency with family time — attending about half of his available visits at the time of termination — made them feel like father wasn't prioritizing them and contributed to their decision to stop attending family time.  And the expert who performed the parent-child interactional assessment

(PCI) opined that forcing a child to see a parent they did not want to see, especially in instances of child abuse and neglect, could be harmful to the child.

¶ 13    Father's final assertion that the Department failed to provide recommended family therapy to ensure family time with all the children isn't accurate.  The PCI recommended *therapeutic* family time first, rather than family therapy, because Y.L-N. and J.L. had refused any type of therapy and, therefore, therapeutic family time could potentially act as a bridge between family therapy and family time.  Considering those recommendations, the Department implemented therapeutic family time.  But as explained, father didn't take full advantage of his family time, and Y.L-N. and J.L. ultimately refused to attend family time with father, which was functionally a prerequisite to family therapy.

¶ 14    We therefore agree with the juvenile court that the Department satisfied its reasonable efforts obligation with respect to father.

C.    Reasonable Efforts to Rehabilitate Mother

¶ 15    Mother contends that the Department failed to make reasonable efforts to rehabilitate her because it (1) didn't provide

the appropriate level and time for therapeutic family time; and (2) allowed Y.N-L. and J.L. to refuse family time.

¶ 16 While the PCI recommended separated therapeutic family time visits so that each child could meet with mother individually, it didn't recommend more frequent visits. In line with the PCI's recommendations, the Department coordinated separate therapeutic family time to occur once a week for two hours. Despite prolonged supervised family time, the caseworker testified that mother had not been able to demonstrate that she could meet the children's emotional, mental, physical, and developmental needs.

¶ 17 The record also doesn't support mother's claim that there were "no safety concerns" with family time. Y.N-L. stopped attending family time with mother because he felt unsafe and uncomfortable with her. Then, during one visit, there was a physical altercation between mother, Y.C., and J.L. While accounts varied on what exactly happened, J.L. reported fearing mother and feeling unsafe around her after the incident. For those reasons, J.L. eventually refused to attend family time with mother.

¶ 18 And mother's family time was limited to supervised visits because she had violated a safety plan and had previously been

6

under the influence of illicit substances during family time. The expert who conducted the PCI also reported that all the children were "anxious," "ambivalent," and "chaotic" during interactions with mother and that family time with her was "upsetting" and "dysregulating" to the children.

¶ 19 The caseworker testified that mother was dismissive of professional advice concerning Z.J.J.L.'s medical condition and did not understand the gravity of her medical needs (for example, worsening Z.J.J.L.'s heart condition by feeding her unhealthy foods that violated her diet plan).

¶ 20 And the expert who performed the PCI and the caseworker both expressed concerns about forcing children to attend family time when safety concerns existed. Regarding Y.N-L. specifically, the caseworker said that "forcing" him to participate in family time with mother would be "harmful" to his "emotional well-being."

¶ 21 Thus, we agree with the juvenile court that the Department satisfied its reasonable efforts obligation with respect to mother.

### III. Fitness Within a Reasonable Time

¶ 22 The parents next contend that the juvenile court erred when it found that they could not become fit parents within a reasonable time. We disagree.

#### A. Legal Principles and Standard of Review

¶ 23 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23. At minimum, reasonable parental care requires the parent to provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *Id.*

¶ 24 In determining whether a parent's conduct or condition is likely to change in a "reasonable time," the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 24.

¶ 25 What constitutes a reasonable time is fact specific and must be determined by considering the child's physical, mental, and emotional needs and conditions. *Id.* at ¶ 25. A reasonable time is not an indefinite time. *Id.* And even when a parent has made

recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶ 24.

¶ 26 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law, meaning we review the court's factual findings for clear error but its legal conclusions de novo. *Id.* at ¶ 10.

## B. Father's Fitness

¶ 27 The juvenile court found that father had not complied with his treatment plan and that he continued to exhibit "the same problems addressed in the treatment plan without adequate improvement," had not improved his relationship with the children, and "continue[d] to struggle with alcohol use which affects the ability to care for the children." Thus, the court found that father was unfit to parent and could not become fit within a reasonable time.

¶ 28 The record supports the court's factual findings and fitness conclusion. Though father engaged in some services, the caseworker testified that father had minimal compliance with monitored sobriety; refused to quit drinking alcohol; and failed to successfully engage in anger management classes, relapse prevention groups, and individual therapy. At the time of the

termination hearing, father attended family time only about half of the time and continued to dismiss professional advice concerning Z.J.J.L.'s medical condition. The older children consistently reported they were afraid of him, and Z.J.J.L. was dysregulated after family time with him.

¶ 29 Beyond that, an expert in parent education and family time supervision opined that the children needed permanency. And the caseworker testified she did not believe either parent could become fit within a reasonable time and that it was in the children's best interests to terminate parental rights.

¶ 30 Given this, we agree with the juvenile court that father could not become fit within a reasonable time.

### C. Mother's Fitness

¶ 31 The juvenile court found that although mother had substantially complied with her treatment plan, the plan had not been successful in reuniting the family and that mother exhibited "the same problems addressed in the treatment plan without adequate improvement." Thus, the court found that mother was unfit to parent and could not become fit within a reasonable time.

¶ 32    The record supports the court's factual findings and fitness conclusion. The evidence shows that mother refused to cooperate for most of the case, didn't address her mental health issues, refused to participate in relapse prevention, had ongoing housing and employment instability, had not improved her parenting skills, and had not progressed beyond supervised family time. On top of that, the older children (who continued to refuse family time with mother) didn't trust or feel safe with her, and concerns remained about mother's ability to understand and accommodate Z.J.J.L.'s considerable medical needs. Indeed, at the termination hearing, mother admitted that she was unable to have the children return to her care at that time.

¶ 33    And the children needed permanency. The older children's case had been ongoing for nearly four years and the youngest's for almost three. At the termination hearing, a bonding and attachment expert testified that the children "need to have some resolution" so that they do not remain in continuing states of "dysregulation and anxiety and distress." The expert further opined that it was not in the children's best interests to delay permanency.

11

¶ 34    Even so, mother asserts that, considering her substantial compliance with the treatment plan, she could become fit if given more time.  But the cases had been open for over three years, and mother had several outstanding areas that she needed to address to become fit.  Under these circumstances, mother's substantial compliance with the treatment plan was not sufficient to render her fit, *see People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005), nor was the juvenile court required to give her more time to become fit, *see S.Z.S.*, ¶ 24.

¶ 35    For these reasons, we agree with the juvenile court that mother could not become fit within a reasonable time.

## IV.    Disposition

¶ 36    We affirm the judgment.

JUDGE TOW and JUSTICE MARTINEZ concur.